# U.S. COURT OF APPEALS CASE NO. 23-3065

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

# CHARLES MATTHEW ERHART

*Plaintiff/Appellee,*

v.

# BofI FEDERAL BANK

*Defendant/Appellant.*

_____

*On Appeal From The United States District Court*
*For The Southern District of California, Case 15-cv-02287-BAS-NLS*
*The Honorable Cynthia Bashant, United States District Judge*

_____

# APPELLANT'S OPENING BRIEF

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Polly Towill, Cal. Bar No. 120420
John Landry, Cal. Bar No. 194374
Heather L. Plocky, Cal. Bar No. 279022
Madalyn A. Macarr, Cal. Bar No. 301539
David M. Berger, Cal. Bar No. 322595
333 South Hope Street, 43rd Floor
Los Angeles, CA 90071
TEL: 213.620.1780

*Attorneys for Defendant/Appellant BofI FEDERAL BANK*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, defendant/appellant BofI Federal Bank states as follows:  BofI Federal Bank (now known as known as Axos Bank) is a wholly-owned subsidiary of Axos Financial, Inc.[1]  BlackRock, Inc. and The Vanguard Group, Inc. own ten percent or more of Axos Financial, Inc.'s stock.

---

[1] Because appellant was known as BofI Federal Bank at the time the complaint was filed in this matter in 2015, the parties and district court, at all times, continued referring to it by its former name, BofI.

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................1

II.    JURISDICTIONAL STATEMENT ...................................4

III.   ISSUES PRESENTED ........................................................5

IV.   STATEMENT OF CASE ....................................................6

      A.     Factual Background..........................................................6

            1.     Erhart Works as an Internal Auditor at BofI.............6

            2.     Erhart Requests Medical Leave .................................6

            3.     Erhart Fails to Return for Work After His Medical Leave Expires.................................................8

      B.     Procedural History...........................................................8

            1.     Erhart Claims He Acted as a Whistleblower .............8

            2.     BofI Narrows the Scope of Erhart's Claims Through Motion Practice........................................9

            3.     The Jury Returns a Verdict in Erhart's Favor..........10

            4.     The District Court Denies BofI's JMOL and New Trial Motion ............................................................11

V.     STANDARDS OF REVIEW............................................11

VI.   SUMMARY OF ARGUMENT.......................................12

VII.   ARGUMENT...................................................................15

      A.     The District Court Erred in Refusing to Enter Judgment as a Matter of Law or Granting a New Trial on BofI's Primary Affirmative Defense.................................................15

      B.     The District Court's Abuse of Discretion in Admitting Evidence of Lawsuits Against Erhart's Mother and Former Girlfriend Tainted the Jury and Required a New Trial. ......................23

      C.     The Lack of Evidence Showing any Injury Arising From Actionable Retaliatory Conduct Warranted Judgment as a Matter of Law or, Alternatively, a New Trial. ...................29

      D.     The Jury's Award Of $1 Million For "Garden-Variety" Emotional Distress And Reputational Harm On Erhart's

Retaliation Claims Was Grossly Excessive, Requiring A New Trial Or A Remittitur..............................................................................35

E.   The Lack Of Evidence Showing any Injury Arising From a Actual Defamatory Statement Warranted Judgment as a Matter of Law, or Alternatively, a New Trial.................................................39

VIII.  CONCLUSION.................................................................................42

SMRH:4864-8836-4678.14

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Acosta v. City of Costa Mesa*
718 F.3d 800 (9th Cir. 2013) ............................................................................... 11

*Alozie v. Ariz. Bd. Of Regents*
562 F. Supp. 3d 203 (D. Ariz. 2021) ................................................. 38

*Antuna v. County of L.A.*
2016 U.S. Dist. LEXIS 204417 (C.D. Cal. Aug. 31, 2016) .............................. 36

*Barranco v. 3D Sys. Corp.*
952 F.3d 1122 (9th Cir. 2020) ................................................... 12, 29

*Bennett v. Rancho Cal. Water Dist.*
35 Cal. App. 5th 908 (2019) ..................................................... 30

*Bostock v. Clayton County*
590 U.S. 644 (2020) ..................................................................... 17

*Claiborne v. Blauser*
934 F.3d 885 (9th Cir. 2019) ................................................... 12

*Coszalter v. City of Salem*
320 F.3d 968 (9th Cir. 2003) ..................................................... 26, 27

*D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*
692 F.2d 1245 (9th Cir. 1982) ................................................... 37

*Doherty v. State Farm Gen. Ins. Co.*
2022 U.S. Dist. LEXIS 131562 (C.D. Cal. Jan. 11, 2022) ................................. 37

*Fenner v. Dependable Trucking Co., Inc.*
716 F.2d 598 (9th Cir. 1983) ..................................................... 36

*Glanzman v. Uniroyal, Inc.*
892 F.2d 58 (9th Cir. 1989) ..................................................... 12

*Glenn-Davis v. City of Oakland*
2007 U.S. Dist. LEXIS 19171 (N.D. Cal. March 5, 2007) ............................. 38, 39

*Harvey v. Home Depot, Inc.*
  Case No. 2004-SOX-36, 2004 47, 2004 WL 5840284 (May 28, 2004) ...........30

*Johnson v. Albertsons LLC*
  2020 U.S. Dist. LEXIS 117070 (W.D. Wash. July 2, 2020)..............................37

*Johnson v. Hale*
  13 F.3d 1351 (9th Cir. 1994) ...............................................................................33

*Jordan v. Sprint Nextel Corp.*
  3 F. Supp. 3d 917 (D. Kan. 2014)........................................................................30

*Lakeside-Scott v. Multnomah County*
  556 F.3d 797 (9th Cir. 2009) ...............................................................................12

*Lawson v. PPG Architectural Finishes, Inc.*
  12 Cal. 5th 703 (2022) .........................................................................................17

*Marlo v. UPS*
  890 F. Supp. 2d 1243 (C.D. Cal. 2012) ..............................................................17

*Molski v. M.J. Cable, Inc.*
  481 F.3d 724 (9th Cir. 2007) ...............................................................................12

*Murray v. UBS Sec., LLV*
  144 S. Ct. 445....................................................................................................17, 21

*Musin v. Honeywell Int'l*
  2020 U.S. Dist. LEXIS 233194 (D. Nev. Dec. 11, 2020) ...................................29

*Oei v. N Star Capital Acquisitions*
  LLC, 486 F. Supp. 2d 1089 (C.D. Cal. 2006) .....................................................24

*Passantino v. Johnson & Johnson Consumer Prod., Inc.*
  212 F.3d 493 (9th Cir. 2000) ...............................................................................37

*Paul v. Asbury Auto. Grp., LLC*
  2009 U.S. Dist. LEXIS 4924 (D. Or. Jan. 23, 2009).........................................37

*Plotnik v. Meihaus*
  208 Cal. App. 4th 1590 (2012) ............................................................................36

iv

*Reeves v. Sanderson Plumbing Prod., Inc.*
530 U.S. 133 (2000)..............................................................................22

*Ryan v. Editions Ltd. W., Inc.*
2012 U.S. Dist. LEXIS 91642 (N.D. Cal. July 2, 2012) ....................37

*Steele v. Youthful Offender Parole Bd.*
162 Cal. App. 4th 1241 (2008) ..........................................................22

*Van Asdale v. Int'l Game Tech.*
577 F.3d 989 (9th Cir. 2009) .............................................................17

*Wagner v. County of Maricopa*
747 F.3d 1048 1052 (9th Cir. 2013) ..................................................12

*Yau v. Allen*
229 Cal. App. 4th 144 (2014) ............................................................30

*Zhang v. Am. Gem Seafoods, Inc.*
339 F.3d 1020 (9th Cir. 2003) ...........................................................32

**Statutes**

18 U.S.C. § 1514A ...........................................................................17, 32

28 U.S.C. § 1291 ....................................................................................5

28 U.S.C. § 1331 ....................................................................................4

28 U.S.C. § 1367 ....................................................................................4

49 U.S.C. § 42121(b)(2)(B)(iii) ...........................................................17

California Labor Code § 1102.6 ...........................................................17

California Labor Code § 1102.5 .....................................................passim

**Other Authorities**

Federal Rule of Appellate Procedure 4(a)(1)........................................5

Federal Rules of Evidence 50(b).........................................................11

Federal Rules of Evidence 59 .......................................................12, 26

Federal Rules of Evidence 401 ................................................................27

Federal Rules of Evidence 402 ................................................................27

I. **INTRODUCTION**

Appellant BofI Federal Bank ("BofI"), seeking to correct a miscarriage of justice below, appeals the district court's denial of its Renewed Motion for Judgment as a Matter of Law Or In The Alternative, Motion for New Trial (the "JMOL and New Trial Motion").

BofI employed plaintiff Charles Matthew Erhart ("Erhart") as an internal auditor. After BofI terminated his employment on June 9, 2015, Erhart sued BofI claiming it had retaliated against him for reporting what he allegedly believed were regulatory and other violations at BofI. He also brought a defamation claim.

At trial, the evidence showed that Erhart's June 9, 2015 termination occurred only after he failed to report to work on May 18, 2015 as scheduled, following an extended medical leave of absence, and then failed to return to work for an additional 16 consecutive business days. At no time during this extended absence did Erhart contact BofI to seek further extended medical leave, offer an excuse, or otherwise explain his disappearance. Consistent with BofI's internal post-medical leave and return-to-work policies, BofI terminated him. The objective evidence showed that BofI would have taken the same action against any employee who, like Erhart, at the end of medical leave, completely failed to report for work or contact BofI. Thus, at trial, BofI established, through clear and convincing

evidence, what is known as a "same-action" defense, a recognized affirmative defense to all of Erhart's retaliation claims.

Importantly, no evidence contradicted BofI's overwhelming same-action showing. Erhart himself admitted that, before his June 9, 2015 termination, he never returned to work after his extended medical leave expired on May 15, 2015, and admitted that he became subject to termination under BofI's policies once he had failed to return for three consecutive days. Erhart never claimed, under any type of constructive discharge theory, that conditions at BofI would be so difficult for him that he could not return to work, and the district court declined to instruct the jury on that theory. Despite all of this, the jury rejected BofI's same-action affirmative defense. The jury's verdict was not supported by the evidence. And the district court erred when it denied the JMOL and New Trial Motion on BofI's same-action defense. This Court must reverse.

The district court also abused its discretion when it admitted evidence at trial showing that in 2016, BofI sued Erhart's mother and former girlfriend to recover confidential BofI customer information (which Erhart supplied to them). These separate, post-employment lawsuits could not serve as actionable retaliatory conduct and were not relevant. The evidence was also highly prejudicial. Yet the district court admitted it. It also allowed Erhart to testify regarding the emotional distress he experienced as a result of BofI's suits against his mother and former

2

girlfriend. Erhart squarely blamed his claimed emotional distress for retaliation on that litigation. Although the district court instructed the jury that Erhart could not recover damages for injury suffered as a result of those lawsuits, that instruction was plainly inadequate as the jury proceeded to award him $1,000,000 in damages for his retaliation claims. Nevertheless, the district court refused to grant BofI a new trial.

The district court further erred when it declined to grant judgment as a matter of law (or a new trial) based on the complete absence of evidence linking any alleged retaliation injury to actionable retaliation conduct. Before trial, the district court limited Erhart's claimed damages to those allegedly arising from reputational harm and emotional distress. At trial, no evidence showed Erhart suffered reputational harm from any alleged retaliation conduct. And any evidence of emotional distress stemmed from BofI's non-actionable litigation conduct (or Erhart's vague fear of future retaliation, which was also non-actionable). On this record, judgement as a matter of law (or a new trial) was required. But even assuming a valid basis existed to award damages to Erhart for his "garden variety" emotional distress, the jury's $1,000,000 award was grossly excessive, and the district court should have ordered a new trial or reduced it. The district court's refusal to do so also warrants reversal.

Lastly, on Erhart's defamation claim, the jury determined that the only statements by BofI that were defamatory concerned Erhart's competence as an internal auditor. At trial, however, Erhart never linked any claimed emotional distress or reputational harm to any statement by BofI directed at his competence in performing audit work. The only statement he identified as the source of any injury to him was a statement that linked his motivation for bringing his lawsuit against BofI, and the timing of that lawsuit, to efforts to profit from a decline in BofI's stock price, which had nothing to do with his competency as an internal auditor. The jury's $500,000 award on Erhart's defamation claim simply had no evidentiary support. Hence, the district court erred in refusing to grant BofI's JMOL and New Trial Motion on Erhart's defamation claim. This Court must reverse.

## II. <u>JURISDICTIONAL STATEMENT</u>

This action arises under the whistleblower protection provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A, *et seq*. Accordingly, the United States District Court for the Southern District of California had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367. Subsequent to the jury's verdict, the district court entered judgment on September 30, 2022. BofI filed its JMOL and New Trial Motion on October 27, 2022. 2-ER-54–90. On September 28, 2023, the district court denied BofI's JMOL and New

Trial Motion, and on October 4, 2023, entered an amended judgment. 1-ER-2–4, 5–31. This Court has jurisdiction pursuant to 28 U.S.C. § 1291. BofI's Notice of Appeal was timely filed on October 23, 2023 pursuant to Federal Rule of Appellate Procedure 4(a)(1). 16-ER-3442–3444.

## III.   ISSUES PRESENTED

1.     Did the district court err in denying BofI judgment as a matter of law or a new trial based on its same-conduct affirmative defense to Erhart's employee retaliation claims?

2.     Did the district court abuse its discretion in admitting evidence showing BofI sued Erhart's mother and former girlfriend in 2016, evidence that was not relevant and highly prejudicial?

3.     Did the district court err in denying BofI judgment as a matter of law or a new trial in light of the absence of a tie between Erhart's claimed emotional distress or reputational injury and actionable retaliatory conduct?

4.     On Erhart's retaliation claims, did the district court abuse its discretion in denying a new trial or a remittitur of the jury's $1 million award for "garden-variety" emotional distress and reputational harm?

5.     Did the district court err in denying BofI judgment as a matter of law or a new trial in light of the absence of a tie between Erhart's claimed emotional distress or reputational injury and actionable defamatory statements?

**IV.** **STATEMENT OF CASE**

    **A.** **Factual Background**

        **1.** **Erhart Works as an Internal Auditor at BofI**

In September 2013, Erhart began working as an internal auditor for BofI.

15-ER-3149. An internal auditor's responsibilities were to complete assigned

audits pursuant to BofI's annual Audit Plan as approved by its Audit Committee.

*Id.*

        **2.** **Erhart Requests Medical Leave**

Erhart's supervisor, the head of Internal Audit, resigned from BofI on March

5, 2015. 8-ER-1604, 1606. That same day, the head of the Governance, Risk and

Compliance Group, John Tolla, temporarily took over the position and learned

there were various outstanding, incomplete audits, many of which were assigned to

Erhart to be completed. 4-ER-738.

The Office of the Comptroller of the Currency ("OCC"), BofI's primary

regulator, was on site at the Bank conducting a routine examination of BofI on

March 5 and 6, 2015. 4-ER-718-720. Tolla asked the internal audit team to be in

the office at 7:00 a.m. on March 6 to prepare as a team for an on-site meeting he

had with the OCC at 8:30 a.m. that day. 4-ER-738. On March 6, everyone in

Internal Audit attended the scheduled 7:00 a.m. meeting except Erhart. 4-ER-746–

47. At that meeting, Tolla learned about missing critical information concerning

the incomplete audits, information he believed Erhart had, and he was forced to

cancel the 8:30 a.m. meeting with the OCC. 4-ER- Erhart failed to respond to Tolla's efforts on March 6, 2015 to contact him. 4-ER-747-49. Although another internal auditor had told Tolla that Erhart would not be coming into work for the 7:00 a.m. meeting, Tolla was not told Erhart was claiming he was sick that day. 4-ER-671–73. Erhart did not directly communicate any information about his whereabouts to Tolla or any other person at BofI designated to receive that information. *See id.* Tolla tried to reach Erhart repeatedly, but Erhart would not pick up his phone call or call in to a meeting that Tolla scheduled for Erhart and him at 10:00 a.m. that day. 4-ER-746–47. That same day, at Tolla's direction, BofI prepared a termination letter for Erhart, but was unsuccessful in delivering it to him. 4-ER-755.

Erhart never received the March 6, 2015 termination letter. On Monday, March 9, 2015, he requested that BofI put him on a medical leave of absence under the Family Medical Leave Act ("FMLA") due to a purported medical condition. 16-ER-3283–3316; 3395. BofI granted Erhart's request for a medical leave of absence retroactive to March 6, 2015, which was the first day that Erhart did not show up to work. 16-ER-3396–3400. BofI later granted Erhart's request to extend his medical leave to May 15, 2015, and sent him a letter informing him that he was expected to return to work on May 18, 2015 after his extended leave expired. 16-ER-3317-22; 7-ER-1275.

### 3. Erhart Fails to Return for Work After His Medical Leave Expires

After his leave expired on Friday, May 15, 2015, Erhart was scheduled to report for work on Monday, May 18, 2015, but he never returned to work or contacted anyone at BofI regarding his failure to report for work. 7-ER-1277–79. BofI formally terminated Erhart's employment 16 business days later on June 9, 2015. 16-ER-3401-3432.

## B. Procedural History

### 1. Erhart Claims He Acted as a Whistleblower

On October 13, 2015, Erhart commenced this action asserting claims against BofI on bases including SOX, the Dodd–Frank Wall Street Reform and Consumer Protection Act ("Dodd–Frank"), California Labor Code Section 1102.5 ("Section 1102.5"), and wrongful termination in violation of public policy. 16-ER-3246. These claims alleged that BofI retaliated against Erhart for reporting what he allegedly believed were various categories of regulatory or other violations of law. (*See id.* at 3249-58.) The central alleged retaliatory conduct was Erhart's June 9, 2015 termination. At trial, the other alleged retaliatory conduct advanced by Erhart, and one that applied only to Erhart's SOX claim, was BofI's attempt to terminate Erhart on March 6, 2015.

In addition to retaliation claims, Erhart brought a claim for defamation.

## 2. BofI Narrows the Scope of Erhart's Claims Through Motion Practice

On September 11, 2017, the district court granted in part and denied in part BofI's motion to dismiss Erhart's First Amended Complaint. 16-ER-3207–3245. It dismissed certain of Erhart's claims without leave to amend, leaving only his claims for retaliation under SOX, Dodd–Frank,[2] and Section 1102.5, and his claims for common law wrongful termination in violation of public policy and defamation. *Id.*

On October 8, 2018, the parties filed a joint motion for determination of a discovery dispute regarding BofI's desire to have an independent mental examination performed on Erhart in light of his claimed past and ongoing "extreme" and "severe" mental and physical harm. 15-ER-3160–86. The court denied BofI's request because of the "garden variety" nature of Erhart's claimed emotional distress. 15-ER-3151-55.

On May 6, 2019, BofI filed its motion for summary judgment. 16-ER-3458. The district court granted in part and denied in part BofI's motion for summary judgment on March 31, 2020, significantly narrowing the scope of Erhart's remaining claims. 15-ER-3058–3147.

---

[2] The district court dismissed this claim prior to the case's submission to the jury for deliberations.

On July 6, 2021, BofI brought a motion *in limine* to exclude evidence of certain alleged conduct and statements that were not actionable under the law, including evidence relating to BofI's allegedly retaliatory conduct after June 9, 2015 (when Erhart was no longer employed), specifically lawsuits commenced by BofI against Erhart's mother and former girlfriend to recover confidential BofI customer information in their possession. 15-ER-2986-3002. Although the district court "agree[d] that post-employment conduct is not actionable for the retaliation element of Erhart's claims," the district court denied BofI's motion to exclude post-employment conduct evidence. 1-ER-49. The district court did grant BofI's request to exclude evidence of Erhart's claims for damages based on future wages and earnings, lost employment benefits, bonuses, overtime, vacation benefits, medical expenses and back pay, but declined to exclude evidence of certain categories of damages that the district court reasoned "are difficult to quantify," including Erhart's claims for emotional distress damages, reputational damages, and punitive damages. 15-ER-2976–85.

### 3. The Jury Returns a Verdict in Erhart's Favor

At trial, after the close of Erhart's case in chief, BofI moved for judgment as a matter of law as to various issues. 10-ER-2048–49, 51; 13-ER-2446-53; 2457; 2537. The district court denied the oral motions relevant to this appeal. 10-ER-2048-52. After hearing the evidence and deliberating, the jury returned a verdict

finding BofI liable on Erhart's SOX claim, his California Labor Code Section 1102.5 and wrongful termination claims (the "state retaliation claims"), and his defamation claim. 15-ER-2969–75. The jury awarded Erhart $1,000,000 in compensatory damages for his retaliation claims (unallocated as between his SOX and state retaliation claims) and $500,000 in compensatory damages for his defamation claim. *Id.*

### 4. The District Court Denies BofI's JMOL and New Trial Motion

On October 27, 2022, BofI filed its JMOL and New Trial Motion. 2-ER-54–90. On November 28, 2022, Erhart filed his opposition to BofI's JMOL and New Trial Motion. 3-ER-365–393. On December 12, 2022, BofI filed its Reply in support of its JMOL and New Trial Motion. 3-ER-394–408. On September 28, 2023, the district court denied the JMOL and New Trial Motion. 1-ER-5–31. On October 4, 2023, the district court entered its amended judgment. 1-ER-2–5. BofI filed its notice of appeal on October 23, 2023. 16-ER-3442-44.

## V. <u>STANDARDS OF REVIEW</u>

A district court's order denying a renewed motion for judgment as a matter of law pursuant to FRCP 50(b) is reviewed *de novo*. *Acosta v. City of Costa Mesa*, 718 F.3d 800, 828 (9th Cir. 2013); *Lakeside-Scott v. Multnomah County*, 556 F.3d 797, 802 (9th Cir. 2009). Judgment as a matter of law should be granted when the evidence, in the light most favorable to the non-moving party, permits only one

reasonable conclusion, and that conclusion is contrary to the jury's verdict. *Lakeside*-Scott, 556 F.3d at 802.

A district court's order denying a motion for new trial pursuant to FRCP 59 is reviewed for an abuse of discretion. *Claiborne v. Blauser*, 934 F.3d 885, 893 (9th Cir. 2019). A party is entitled to a new trial if the verdict is contrary to the clear weight of the evidence or to prevent a miscarriage of justice. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007).

A district court's evidentiary decisions are reviewed under an abuse of discretion standard. *Glanzman v. Uniroyal, Inc.*, 892 F.2d 58, 59 (9th Cir. 1989). To reverse on the basis of an erroneous evidentiary ruling, the court must conclude not only that the district court abused its discretion, but also that the error was prejudicial. *Wagner v. County of Maricopa*, 747 F.3d 1048 1052 (9th Cir. 2013). "When error is established, [the court] must presume prejudice unless it is more probable than not that the error did not materially affect the verdict." *Barranco v. 3D Sys. Corp.*, 952 F.3d 1122, 1127 (9th Cir. 2020).

## VI.   SUMMARY OF ARGUMENT

**Issue Presented No. 1 – BofI Established Its "Same-Action" Affirmative Defense Under The Applicable Burden Of Proof.** BofI established a "same-action" affirmative defense to all three of Erhart's employee retaliation claims. Based on the evidence at trial, the only conclusion any reasonable jury could have

reached is that BofI would have terminated any employee who, like Erhart, repeatedly failed, after their medical leave expired, to report for work, or contact anyone at BofI to obtain further leave or explain the absence. Specifically, BofI established by clear and convincing evidence that a lawful, independent basis to terminate Erhart existed on June 9, 2015 through (1) timeline evidence of Erhart's medical leaves of absence and failure to return or contact BofI and (2) BofI's internal policy treating such sustained, unexcused absenteeism as a valid, stand-alone ground for termination. The district court erred in not finding for BofI on this affirmative defense as a matter of law, or at a minimum, abused its discretion in not granting BofI a new trial.

**Issue Presented No. 2 – The District Court Erred By Admitting Non-Relevant And Highly Prejudicial Evidence.** BofI terminated Erhart's employment on June 9, 2015. On January 22, 2016, BofI filed an action against Erhart's mother and, on May 17, 2016, his former girlfriend to recover from them BofI's confidential customer information that Erhart had given them and that remained in their possession at the time the suits were brought. BofI sought to preclude the admission of this evidence at trial because it did not itself constitute actionable retaliatory conduct on which any claim of injury, including emotional distress, could be based, was not relevant, and, even if relevant, its unfair prejudice to BofI substantially outweighed any probative value. The district court still

admitted it, which tainted the jury and caused the jury to issue a verdict against BofI based on passion and prejudice alone.

**Issue Presented No. 3 – Erhart's Retaliation Claims Must Fail Because No Evidence Showed Harm Stemming From Any Actionable Conduct.** Erhart did not present any competent evidence demonstrating that he suffered emotional distress or reputational harm as a result of any actionable conduct. The only evidence at trial that Erhart cited for his alleged emotional distress concerned BofI's lawsuits against his mother and former girlfriend, and the stress of this litigation, and vague fear of future retaliation, none of which constitute actionable adverse employment actions as a matter of law. Erhart did not present any reputational harm evidence related to his termination. The district court should have granted judgment as a matter of law, or at a minimum, a new trial.

**Issue Presented No. 4 – The Jury Awarded Grossly Excessive Damages On Erhart's Retaliation Claims.** The evidence did not support the jury's $1,000,000 verdict, and the award's size reflects its passion and prejudice against BofI rather than any reasonable estimate of injury based on the actual evidence. BofI does not argue, as the district court suggested, that an objective standard must be applied to Erhart's emotional distress claim. However, Erhart failed to proffer any evidence supporting a damages award in the amount of $1,000,000 based on

any garden-variety emotional distress he might have suffered. Hence, the district court erred in refusing to grant remittitur or a new trial.

**Issue Presented No. 5 –No Evidence Showed Any Injury Arising From An Actual Defamatory Statement.** BofI is entitled to judgment as a matter of law or, alternatively, a new trial, on Erhart's defamation claim because no evidence showed any emotional distress or reputational harm resulted from any defamatory statement regarding Erhart's competence as an internal auditor, the only category of statements the jury found defamatory. Erhart simply failed to connect any of his claimed emotional distress or reputational harm to the purported defamatory statements concerning his competence. The district court erred in not granting BofI judgment as a matter of law (or a new trial) on Erhart's defamation claim.

## VII. <u>ARGUMENT</u>

### A. <u>The District Court Erred in Refusing to Enter Judgment as a Matter of Law or Granting a New Trial on BofI's Primary Affirmative Defense.</u>

Erhart's SOX, Section 1102.5, and wrongful termination claims centered on his June 9, 2015 termination.[3] That termination occurred only after his extended medical leave had expired on May 16, 2015, requiring him to return to work on

---

[3] BofI attempted but failed to deliver a termination notice to him on March 6, 2015. 4-ER-755. He applied for medical leave the next business day, and BofI rescinded the termination. 1-ER-3395; 3283-3316. Erhart learned of this attempted termination after the fact.

Monday, May 18, 2015, and Erhart then failed to return to work for 16 consecutive business days until BofI formally terminated him on June 9, 2015 for job abandonment. 7-ER-1277–79; 16-ER-3401-3430. At no point during this unexcused absence did Erhart contact BofI, either to explain his absence or to seek a further extended medical leave. 7-ER-1277–79. At trial, BofI established through its written employee policies that any BofI employee who disappeared, failed to show up for work, and did not communicate with anyone as to why they were not attending to their job responsibilities in the same manner as Erhart would have experienced the same consequence—termination. 16-ER-3354, 3360.

In making this showing, BofI established a "same-action" affirmative defense available to employers under all three of Erhart's employee retaliation claims. For example, under SOX, the plaintiff employee bears the initial burden of showing that his protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(iii).[4] Even if the employee makes this showing, under that statute's burden-shifting framework, the employer can defeat liability if it shows "by clear and convincing evidence" that it "would have taken the same unfavorable personnel action in the

---

[4] SOX directs district courts to apply the "legal burdens of proof set forth in section 42121(b) of title 49, United States Code"—a provision of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century. *See* 18 U.S.C. § 1514A(b)(2)(C).

absence of " the protected activity. 49 U.S.C. § 42121(b)(2)(B)(iv); *see also Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009) (recognizing same-action affirmative defense).[5] "The question is 'whether the employer would have "retain[ed] an otherwise identical employee' who had not engaged in the protected activity." *Murray v. UBS Sec., LLV*, 144 S. Ct. 445, 456 (quoting *Bostock v. Clayton County*, 590 U.S. 644, 656 (2020)). That is the question the jury confronted here. 15-ER-2930.

Based on the evidence at trial, the only conclusion any reasonable jury could have reached is that BofI would have terminated any employee who, like Erhart, repeatedly failed, post-medical leave, to report for work or contact anyone at BofI expressing a desire to maintain his job. Specifically, BofI established that a lawful, independent basis to terminate Erhart existed on June 9, 2015 through (1) timeline evidence of Erhart's medical leaves of absence and failure to return or contact BofI and (2) BofI's internal policy treating such sustained, unexcused absenteeism as a valid, stand-alone ground for termination.

---

[5] California law uses a similar burden-shifting framework. Cal. Labor Code § 1102.6; *Lawson v. PPG Architectural Finishes, Inc.*, 12 Cal. 5th 703, 712 (2022) (holding Section 1102.6's burden-shifting framework applies to Section 1102.5 causes of action); *Marlo v. UPS*, 890 F. Supp. 2d 1243, 1245 (C.D. Cal. 2012) (same-action defense applies to claims for wrongful termination in violation of public policy under California law); *see also* 15-ER-2930.

17

The timeline evidence showed that, on March 9, 2015, Erhart requested that BofI grant him medical leave of absence under the FMLA due to a purported medical condition. 1-ER-3395; 3283-3316. After Erhart submitted the proper FMLA certification documents, on March 25, 2015, BofI granted him medical leave retroactive to March 6, 2015 (the first day that Erhart did not show up to work.) 16-ER-3396–3400. On April 15, 2015, Erhart submitted another doctor's note seeking to extend his medical leave to May 15, 2015. 16-ER-3317-3322; 7-ER-1275. On April 16, 2015, BofI granted this request, sending a letter informing him that his leave would expire on Friday, May 15, 2015 and that BofI expected him to return to work on Monday, May 18, 2015. 16-ER-3317-3322; 7-ER-1275. On that designated return day, Erhart failed to report to work. Nor did he report the next day or the day after that.

The district court's Order cited evidence that BofI did not contact Erhart before May 15, 2015 to remind him that his medical leave would expire on that date, a reminder BofI usually sent to employees (even though there was no legal obligation or internal policy requiring such a reminder). 1-ER-16. But the fact remains that a week went by, and Erhart still had not returned.[6] Then another

---

[6] The record showed Erhart needed no reminder as he conceded he at all times was aware that his medical leave would end on May 15, 2015. 7-ER-1275. But even if he needed some reminder as to the specific date on which his leave would end, no

week passed, and Erhart still had not reported for work. At no point during this persistent absence did Erhart contact anyone at BofI. 7-ER-1277–79. He, for all intents and purposes, disappeared.[7] By June 9, 2015, Erhart still failed to report for work, and he had already missed 15 consecutive days of work since his medical leave expired. On June 9, 2015, BofI formally provided notice to Erhart that it was terminating his employment on the ground of job abandonment. 16-ER-3401-3430.

Evidence showing BofI's post-medical leave and return-to-work policy was as clear and uncontroverted as the above timeline. BofI's Revised Employee Handbook at the time of Erhart's employment warned that "[a]ny employee who fails to return to work as scheduled after FMLA/CFRA leave, or exceeds the 12-week FMLA/CFRA entitlement, will be subject to BofI's standard leave of absence and attendance policies. This may result in termination if you have no other company-provided leave available to you that applies to your continued absence." 16-ER-3354. BofI's standard absenteeism policy stated that "[a]lthough an employee may be terminated at any time for failing to report to work without

---

reasonable inference but intentional job abandonment explains Erhart's complete and total failure to report for so many consecutive days.

[7] Erhart conceded that, well before June 9, 2015, he was already pursuing a new job at another company called Renovate America, and ultimately secured a full-time offer to join Renovate America. 6-ER-1169–72; 7-ER-1283; 16-ER-3431-3441.

contacting his or her supervisor, if an employee fails to report for work or call in for three consecutive calendar days, they will be considered to have abandoned their job and will be automatically terminated." 1-ER-3360; 6-ER-1189–1194.[8]

There was only one conclusion the jury could have drawn from this evidence: Even absent protected activity, any employee who similarly failed to return to work for so many consecutive days would have suffered the same fate under BofI's employment policies. Once Erhart's extended medical leave expired on May 15, 2015, because he had not sought or obtained further leave to apply to his continued absence, he was required "to return to work as scheduled" on May 18, 2015. In failing to do so, he became at that point subject to "termination." 16-ER-3354. By May 21, 2015, when he then "fail[ed] to report or call in for three (3) consecutive calendar days" he was technically "considered to have abandoned [his] job and [was] automatically terminated." 16-ER-3360. By the time BofI formalized his termination on June 9, 2015, Erhart had not reported for work for 16 consecutive working days.

Notably, Erhart himself conceded at trial that, as of June 9, 2015, he was subject to termination under BofI's employment policy. 6-ER-1193–94 (Erhart admits he understood he would be subject to termination if he failed to return to

---

[8] Erhart provided written confirmation to BofI during his employment that he had read the Revised Employee Handbook that included these leave of absence and absenteeism provisions. 16-ER-3392–3394.

work for three consecutive days after his medical leave expired); 7-ER-1278–79 (Erhart admits that he "never came back to work" after his medical leave expired). In the end, the heightened "clear and convincing" evidentiary standard applicable to BofI's same-action affirmative defense presented no obstacle and was easily met. Simply put, the objective and uncontroverted facts unquestionably showed that BofI would have taken the same action it took on June 9, 2015 absent the alleged protected activity. *Murray*, 144 S. Ct. at 446 (discussing same-action affirmative defense). Contrary to the district court's reasoning, no "credibility determinations" by the jury could have led the jury to reject the evidence presented by BofI. 1-ER-16. Moreover, BofI's uncontroverted black-and-white employment policies, which Erhart conceded applied and governed his employment, is not "evidence favorable to the moving party that the jury is not required to believe." *See* 1-ER-17 (quoting *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 151 (2000)). No evidence showed or suggested, for example, BofI's policies were not in fact company policy or that they were unenforceable, illegal or inapplicable to Erhart.

Significantly, no independent, legal justification excused Erhart's failure to return for work, and Erhart never invoked any justification. For example, he never alleged or claimed that circumstances at BofI before June 9, 2015 had become so intolerable for him that his post-medical leave failure to return for work was

essentially involuntary, such that BofI "constructively" terminated him before June 9, 2015. *See Steele v. Youthful Offender Parole Bd.*, 162 Cal. App. 4th 1241, 1253 (2008) (identifying constructive termination as occurring when "the working conditions are so unusually adverse that a reasonable employee in plaintiff's position would have felt compelled to resign" (citations and quotation marks omitted)). Erhart never asserted any constructive termination claim against BofI and, as a result, the district court declined to instruct the jury that it could consider if Erhart had been constructively terminated. 13-ER-2518.

In sum, construing the evidence in the light most favorable to Erhart, the evidence clearly and convincingly showed Erhart's June 9, 2015 termination would have occurred regardless of any protected activity by him. BofI readily carried its burden of proof. As a result, the district court erred in failing to grant BofI's Renewed Motion for Judgment as a Matter of Law as to Erhart's SOX, Section 1102.5 and wrongful termination claims. Moreover, even if Erhart's SOX claim could have been premised on BofI's attempt to terminate Erhart on March 6, 2015, the district court still abused its discretion in failing to grant BofI's Motion for a New Trial. The jury's verdict is not clear to how it allocated its $1 million damages award among the three employment claims, but there is no basis to suppose the award would not have been different if the state law claims had been removed from the mix. Accordingly, even if the same-action defense required

judgment as a matter of law only on the state law retaliation claims, the error still materially affected the verdict. Additionally, since the jury found BofI liable on the Section 1102.5 and wrongful termination claims based on Erhart's June 9, 2015 termination, it is at least as probable as not that the jury also found BofI liable under SOX based on the June 9, 2015 termination (as opposed to the March 6 attempted termination).[9] Thus, if this Court concludes the district court erred in not granting judgment as a matter of law based on BofI's same-action affirmative defense on Erhart's Section 1102.5 and wrongful termination claims, at a minimum, a new trial is needed on Erhart's SOX claim.

**B.** **The District Court's Abuse of Discretion in Admitting Evidence of Lawsuits Against Erhart's Mother and Former Girlfriend Tainted the Jury and Required a New Trial.**

BofI terminated Erhart's employment on June 9, 2015. On January 22, 2016, BofI filed an action against Erhart's mother and, on May 17, 2016, his former girlfriend to recover from them BofI's confidential customer information

---

[9] For Erhart's state law retaliation claims, the only actionable alleged retaliatory conduct at issue was the June 9, 2015 termination. *See* 15-ER-2928-29. Under the SOX claim, Erhart conceded that, in addition to the June 9, 2015 termination, he principally relied upon the March 6 attempted termination as a basis for retaliation ("While there is sufficient evidence to show that the December 2014 performance downgrade itself was retaliatory, at trial Mr. Erhart argued the two terminations were the principal grounds to support violations under SOX and his state law claims.") 3-ER-379. As the district court acknowledged, there were not "two terminations." Rather, BofI attempted to deliver a termination letter on March 6, but was unable to do so. 4-ER-755; 1-ER-10.

that Erhart had given them and that remained in their possession at the time the suits were brought. *See* 6-ER-1152 (Erhart recognized that he "was to blame for my mom and my girlfriend getting sued."). BofI promptly dismissed each suit after it secured the return of its confidential information from Erhart's mother and former girlfriend. *See* 10-ER-2008, 2014-15.

Before trial, BofI moved to exclude evidence of these lawsuits because the evidence was not relevant and, even if relevant, the potential danger of unfair prejudice to BofI substantially outweighed its probative value. 15-ER-2986–3002. Specifically, BofI had brought each lawsuit long after Erhart's employment with BofI had ended and so could not serve as actionable conduct for his employment-related claims.[10] 15-ER-2993-96 The district court agreed with the first premise of BofI's argument and was not relevant. 1-ER-49 (recognizing that "post-employment conduct is not actionable for the retaliation element of Erhart's claims."). But it disagreed with the second premise, reasoning that the concededly non-actionable conduct nevertheless had the "'tendency to make a fact more or less

---

[10] The litigation privilege also insulated BofI from liability for claimed damages arising from these lawsuits. *See Oei v. N Star Capital Acquisitions*, LLC, 486 F. Supp. 2d 1089, 1099 (C.D. Cal. 2006) (citations omitted) ("It is well established, for example, that claims for intentional infliction of emotion distress are subject to the litigation privilege. Additionally, in the absence of statutory language indicating a contrary legislative intent, the litigation privilege applies to statutory causes of action as well.").

probable than it would be without the evidence'"—specifically, whether the Bank terminated Erhart in retaliation for protected conduct. It denied BofI's motion *in limine* on that basis.[11] 1-ER-51.

At trial, however, the court allowed Erhart to testify how BofI's filing of legal actions against his mother and former girlfriend caused him mental distress. *See* 1-ER-29 (noting Erhart's testimony caused Erhart to feel awful and at blame for his mother's and girlfriend's predicaments).[12] BofI objected to this evidence. *See, e.g.*, 6-ER-1148–49 (overruling BofI's objection to the following question on the ground that it was overbroad with respect to the phrase "conduct of": "What other kinds of symptoms did you experience that you attribute to the conduct of the Bank against you?"); *Id.* at 1150–52 (Erhart's testimony, allowed over BofI's objection, that he felt "[a]wful" to see that his girlfriend was scared); 7-ER-1492–94 [reasoning that even if not relevant to Erhart's emotional distress, such evidence was relevant to the "overall picture" and BofI's intent to retaliate]). The district court instructed the jury that, in its award of damages (if any), it should not consider any emotional distress Erhart allegedly suffered as a result of the

---

[11] In denying BofI's motion, the district court did not specifically address the relevance (or lack thereof) of the lawsuits against Erhart's mother and former girlfriend.

[12] To compound the issue, the district court permitted, over BofI's objection, Erhart's mother and former girlfriend to also testify about the lawsuits BofI brought against them. 10-ER-1970; 1998.

purported third parties' emotional distress or resulting from this or any other litigation. 15-ER-2953, 2958–59.

In denying BofI's Rule 59 motion on this issue, the district court held that BofI failed to show that: (1) it erred in its evidentiary determinations; and (2) the admission of this evidence was so prejudicial that permitting the verdict to stand would result in a miscarriage of justice. 1-ER-30. The district court reasoned that the evidence of post-employment conduct, which itself was not actionable as an adverse employment action, nevertheless addressed the "overall picture," which the district court held was relevant to whether the Bank had a retaliatory intent when it terminated Erhart on June 9, 2015—"even if it's not relevant on the issue of emotional distress." 1-ER-29–30; 7-ER-1442.

To justify its conclusion, the district court relied on *Coszalter v. City of Salem*, 320 F.3d 968, 978 (9th Cir. 2003) for the proposition that "proving retaliatory intent" is a question of fact that must be decided in light of the "surrounding circumstances." 1-ER-30. But *Coszalter* does not support the weight the district court placed on it. *Coszalter* concerned the passage of time between the alleged protected activity and the alleged actionable adverse employment actions. The district court below had granted defendants' summary judgment motion based solely on a three to eight-month time gap, reasoning that the gap negated an inference that the protected activity motivated the adverse actions. *See*

*Coszalter*, 320 F.3d at 973. In reversing, this Court stated that "[a] rule that any period over a certain time is per se too long . . . would be unrealistically simplistic" because "some retaliators prefer to take their time: They may wait until the victim is especially vulnerable" to the adverse employment action or until "an especially hurtful [adverse employment] action becomes possible." *Id.* at 977-78. Here, Erhart's employment ended in June 2015. By that time, whatever adverse employment action was going to occur, had already occurred. So no comparable circumstance of an employer possibly "prefer[ring] to take [its] time" or "wait[ing] until the victim is especially vulnerable" before retaliating existed. *Coszalter* is inapposite for this reason. Unlike the situation there, BofI's lawsuits were not actionable adverse employment actions and, by the time they were brought, Erhart was not a BofI employee and, in fact, was employed elsewhere.

Having agreed with BofI that the lawsuits in 2016 against Erhart's mother and former girlfriend (filed seven and eleven months after Erhart was terminated from BofI) did not constitute adverse employment actions as a matter of law (1-ER-49), the district court erred in characterizing them as "surrounding circumstances" to any actionable adverse employment action against Erhart. Under Federal Rules of Evidence 401 and 402, the evidence was not relevant to the issue of liability as no reasonable inference that retaliation was a contributing factor in Erhart's June 2015 termination could be drawn from the lawsuits in 2016.

BofI's lawsuits against Erhart's mother and girlfriend constituted a valid exercise of BofI's right and obligation to recover confidential customer information. But even if this effort was somehow tenuously relevant, its admission into evidence risked inflaming the jury against BofI and was unfairly prejudicial. In denying BofI's motion for a new trial, the district court reasoned that its instructions to the jury were sufficient to prevent the jury from awarding Erhart damages for the emotional distress that he claimed the lawsuits caused him. *See* 1-ER-30–31 (noting the general rule that the jury is "presumed to follow the court's instructions."). But instructions were not sufficient and the substantial prejudice to BofI was not avoided because, as demonstrated below, *infra*, Section VII.C., the only evidence at trial supporting the jury's damages award on Erhart's SOX, Section 1102.5, and wrongful termination claims was Erhart's claimed emotional distress resulting from the lawsuits against his mother and former girlfriend. It is clear from this that the jury did not follow the district court's instructions. Certainly, those instructions did not cure the prejudice caused by the district court's improper admission of evidence of BofI's lawsuits against Erhart's mother and former girlfriend.

In sum, evidence of BofI's lawsuits to recover confidential customer information from Erhart's mother and former girlfriend was not relevant. Even if it had some minimal relevance, the unfair prejudice to BofI substantially

outweighed its probative value. The district court's instructions to the jury did nothing to remove that prejudice. Because the Court is required to "presume prejudice unless it is more probable than not that the error did not materially affect the verdict," the district court erred in denying BofI's motion for new trial. *Barranco*, 952 F.3d at 1127.

### C.    The Lack of Evidence Showing any Injury Arising From Actionable Retaliatory Conduct Warranted Judgment as a Matter of Law or, Alternatively, a New Trial.

Based on the district court's rulings, in connection with Erhart's SOX, Section 1102.5, and Wrongful Termination claims, Erhart could only seek damages for emotional distress and reputational harm. 15-ER- BofI sought judgment as a matter of law or, alternatively, a new trial because there was no evidence that Erhart suffered emotional distress or reputational harm as a result of any compensable retaliatory act. 2-ER-72. The district court nevertheless denied BofI's requested relief. 1-ER-24. The district court erred.

"[T]he plain text of the Sarbanes-Oxley Act protects 'employees' from retaliation." *Musin v. Honeywell Int'l*, 2020 U.S. Dist. LEXIS 233194, at *6-7 (D. Nev. Dec. 11, 2020). A plaintiff that "alleges no employment relationship between himself and [defendant employer] *at the time of the alleged retaliation*" cannot state a claim under SOX. *Id.* (emphasis added); *see also Jordan v. Sprint Nextel Corp.*, 3 F. Supp. 3d 917, 931 n.46 (D. Kan. 2014) (emphasis in original) (citing

*Harvey v. Home Depot, Inc.*, Case No. 2004-SOX-36, 2004 DOLSOX LEXIS 47, 2004 WL 5840284, at *3 (May 28, 2004) (ALJ) ("with the exception of blacklisting or other active interference with subsequent employment, the SOX employee protection provisions essentially shelter an employee from employment discrimination in retaliation for his or her protected activities, *while* the complainant is an employee of the respondent.")). Moreover, "a prerequisite to asserting a violation of Labor Code section 1102.5 is the existence of an employer-employee relationship *at the time the allegedly retaliatory action occurred*[.]" *Bennett v. Rancho Cal. Water Dist.*, 35 Cal. App. 5th 908, 921, 248 (2019) (emphasis added). Finally, for a wrongful termination in violation of public policy claim, the retaliatory act can only be the termination of the employee-employer relationship. "The elements of a claim for wrongful discharge in violation of public policy are (1) an employer-employee relationship, (2) the employer terminated the plaintiff's employment, (3) the termination was substantially motivated by a violation of public policy, and (4) the discharge caused the plaintiff harm." *Yau v. Allen*, 229 Cal. App. 4th 144, 154 (2014).

Regarding Erhart's claimed emotional distress, the record evidence confirmed that any emotional distress he allegedly suffered was not caused by his June 9, 2015 termination or the March 6 attempted termination that never materialized. *See* 10-ER-2574. Although Erhart visited a doctor after March 6,

and before his June 9 termination (for FMLA compliance purposes), Erhart never

connected these visits with any alleged emotional distress. (6-ER-1232; 7-ER-

1279). Erhart also confirmed that he had already been pursuing other employment

(by late April 2015) (6-ER-1169–71) and was already interviewing for another

position in which he would be paid $8,000 more per year compared to his role at

BofI, which he ultimately secured shortly thereafter. 6-ER-1172.

Instead, Erhart's claimed emotional distress resulted from BofI's lawsuits in

2016 against Erhart's mother and former girlfriend. To the extent there was any

emotional distress evidence beyond that, it concerned emotional distress arising

from the litigation between Erhart and BofI, and Erhart's fear of prospective post-

termination retaliation that never materialized (*see id.* at 1208; 10-ER-2052),

conduct that was equally non-actionable and provided no basis for a damages

award. 6-ER-1241 (the Court recognized "[i]t's clear that he can't recover because

of this litigation . . . you cannot recover for the stress of litigation."); 15-ER-2958

("Neither side may recover any damages for any injury suffered as a result of the

filing of this lawsuit, the counter claims, or any other lawsuit."); 1-ER-49

(emotional distress resulting from post-termination conduct is not compensable).

But rather than addressing the complete lack of any evidence connecting Erhart's

claimed emotional distress to any compensable act, the district court stated that

BofI had failed to confront the low evidentiary threshold required to establish

emotional distress damages in this Circuit. *See* 1-ER-22. But BofI did not, as the district court suggests, argue that emotional distress damages were unavailable to Erhart absent physical manifestations of that distress, corroborating testimony, or independent medical evidence. Rather, BofI pointed to the complete absence of any testimony from Erhart himself that any of his emotional distress was ***caused*** by any compensable retaliatory act. *See* 18 U.S.C. § 1514A(c)(2) (emphasis added) ("Relief . . . shall include (A) reinstatement with the same seniority status that the employee would have had, ***but for*** the discrimination . . . (C) compensation for any special damages sustained ***as a result of the discrimination*** . . . ."). If anything, the Ninth Circuit authority the district court cites in its order, which concerns emotional distress injury ***directly resulting from*** actionable conduct, underscores why BofI is entitled to judgment as a matter of law. *See Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1041 (9th Cir. 2003) (upholding award of emotional distress damages where the evidence showed the emotional distress directly resulted from wrongful termination); *Johnson v. Hale*, 13 F.3d 1351, 1354 (9th Cir. 1994) (same, with respect to racial discrimination). Here, Erhart did not put forward *any* evidence, including even in the form of his own uncorroborated testimony, that any of his claimed emotional distress was caused by any compensable conduct. *See* 1-ER-23.

The few fragments of Erhart's testimony the district court pointed to do not

change this reality. In its order, the district court noted that Erhart claimed he suffered symptoms "because of" the unidentified "actions" BofI took against him. 1-ER-23 (*citing* 6-ER-1148). However, a closer look at the trial transcript reveals that Erhart's counsel was asking him about his "emotional distress and for general damages arising from [his] claims of defamation"—not any employee retaliation claim. 6-ER-1148. Even in answering his counsel's questions, Erhart clarified that his purported emotional distress did not center on any alleged retaliation, but on the lawsuits against his mother and former girlfriend and his "fear of" future, unmaterialized retaliation. 6-ER-1147–49. Notably, Erhart explained that "there were two cases where it really accelerated for me. The Bank – they ended up suing my mom and my girlfriend…I just constantly was fearful of who they were going to go [after] next." 6-ER-1149. And Erhart testified (over BofI's objection) that he felt "[a]wful" when he saw that his former girlfriend was scared. 6-ER-1151–52. In response to a question asking if he had lost friendships, Erhart testified:

> **A.** A few along the way. I mean, some of those are just the nature of just being human. But I mean, ***the hardest thing for me was the burden it took on my relationship with Ms. Cornell, who the Bank sued.*** <u>***That was probably the worst***</u>.

6-ER-1159 (emphasis added).

The district court also noted Erhart's testimony that he "had severe anxiety for a very long time,"[13] and there were instances where it was hard for him to breathe, with "sleepless nights" and episodes where he became "so sick to [his] stomach that [he] threw up." 1-ER-23 (*citing* 6-ER-1149). But Erhart explained that "a lot of [the emotional distress] spawned from, like, fear of retaliation." 6-ER-1149; *see also* 12-ER-2384–85 (emphasis added) (identifying "fear of retaliation that the Bank was going to accuse me of something . . . or attack me or people around me" as the "***root cause***" of his anxiety)). At no point did Erhart connect his emotional distress to any actionable retaliatory act.

In other words, even the partially excerpted testimony the district court cited confirms that none of Erhart's emotional distress – per his own testimony – resulted from any actionable retaliatory conduct. The testimony the district court cited shows that Erhart may well have suffered emotional distress as a result of BofI's "actions," but he was only entitled to recover for emotional distress resulting from "actions" that constituted actionable retaliatory conduct. There was *no* testimony on that score.

In a similar vein, Erhart also proffered no evidence demonstrating he suffered reputational harm as a result of any retaliation. The extent of Erhart's

---

[13]    Erhart testified that his anxiety "peaked around April 2020" (*i.e.*, nearly five years after his employment with BofI ended and during the height of the global COVID-19 pandemic). 6-ER-1148, 1171–72.

reputational harm testimony concerned conduct related to his defamation claim, not his retaliation claims.  *See infra*, Section VII.E.  Hence, there is no reputational harm evidence by which to sustain any award of damages for reputational harm.[14]

For these reasons, the district court erred in declining to grant BofI judgment as a matter of law or, alternatively, a new trial on Erhart's SOX, Section 1105.2, and wrongful termination in violation of public policy claims.

**D.    The Jury's Award Of $1 Million For "Garden-Variety" Emotional Distress And Reputational Harm On Erhart's Retaliation Claims Was Grossly Excessive, Requiring A New Trial Or A Remittitur.[15]**

While a jury has "vast discretion" to determine the amount of damages to be awarded, that discretion is abused and the jury's determination should be overturned where damages are incorrect as a matter of law or are the product of "passion, prejudice, or corruption."  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012).  Here, the jury's $1 million award is so grossly excessive that it simply reflects the jury's passion and prejudice against BofI, so it cannot stand.  *See, e.g.*, *Antuna v. County of L.A.*, 2016 U.S. Dist. LEXIS 204417, at *17 (C.D.

---

[14] Again, Erhart quickly found a new, higher paying job, shortly after June 9, 2015. 6-ER-1172.

[15] Erhart stipulated that he would not offer any testimony from any medical professionals because he was claiming only garden variety emotional distress.  15-ER-3054-57.  BofI sought to compel a mental examination of Erhart and sought to compel additional medical records, both of which the Court denied because of the garden variety nature of Erhart's claimed emotional distress.  16-ER-3198; *see also* 15-ER-3153, 3158.

Cal. Aug. 31, 2016) (granting remittitur of $750,000 jury award for non-economic damages to $320,000 after analyzing awards in comparable cases); *see also Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983).

The district court reasoned that, because Erhart asked for $12 million in his closing argument and the jury awarded him "but a fraction" of what he requested, it was therefore reasonable. 1-ER-28. This reasoning is neither legally nor factually sound. *See Ryan v. Editions Ltd. W., Inc.*, 2012 U.S. Dist. LEXIS 91642, at *19 (N.D. Cal. July 2, 2012) ("Even though counsel references a damages award in his closing argument, argument alone is not evidence.").

In this Circuit, although emotional distress damages awards need not be supported by "some kind of 'objective' evidence" (*Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000)), grossly excessive awards still must be reduced where they exceed the "maximum amount sustainable by the evidence." *D&S Redi-Mix v. Sierra Redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982); *see also Doherty v. State Farm Gen. Ins. Co.*, 2022 U.S. Dist. LEXIS 131562, at **15-16 (C.D. Cal. Jan. 11, 2022) (holding an emotional distress award of $3,000,000 required a new trial because the amount was "grossly excessive considering the evidence presented at trial" where the plaintiff presented no evidence of significant, concrete harm or evidence of significant manifestations of her emotional distress, such as testimony illustrating

36

how her distress interfered with her everyday life). Indeed, courts in this Circuit routinely reduce damages awards based on insufficient evidence of emotional distress. *See, e.g.*, *Paul v. Asbury Auto. Grp., LLC*, 2009 U.S. Dist. LEXIS 4924, at \*\*20-25 (D. Or. Jan. 23, 2009) (granting remittitur and reducing emotional distress damages awards of $1.9 million and $2.1 million on hostile work environment claims to $150,000 based on the evidence); *Johnson v. Albertsons LLC*, 2020 U.S. Dist. LEXIS 117070, at \*\*12-13 (W.D. Wash. July 2, 2020) (remitting damages award of $750,000 to $200,000 based on unspecified "humiliat[ion]" and "loss of self-esteem" that was "relatively short" and "garden variety"); *Alozie v. Ariz. Bd. Of Regents*, 562 F. Supp. 3d 203 (D. Ariz. 2021) (granting remittitur of $357,000 jury verdict on discrimination and retaliation claims under Title VII and 42 U.S.C. § 1983, reasoning that although the plaintiff "is not required under the Ninth Circuit's precedents to provide objective evidence of emotional harm to recover, [] the Court will not award hundreds of thousands of dollars in damages for mere 'garden variety' emotional distress" where the plaintiff's testimony regarding his emotional distress was vague, he did not see a doctor or mental health professional, and did not provide the essential facts to suggest he suffered sufficient physiological or psychological harm worthy of a $300,000 judgment); *Glenn-Davis v. City of Oakland,* 2007 U.S. Dist. LEXIS 19171, \*5-9 (N.D. Cal. March 5, 2007) (granting remittitur of jury's $1.85 million

emotional distress damages award as "wildly excessive and unsupported by the evidence" in a garden variety emotional distress case despite plaintiff's testimony that, as a result of not receiving the promotion, she was "extremely disappointed," "humiliated," and "deeply betrayed," and that it was "extremely difficult," "extremely stressful," and "painful" to return to work after maternity leave).

Here, as with the plaintiff in *Glenn-Davis*, Erhart did not testify that he was unable to perform his job as a result of any alleged retaliatory conduct, or that he sought psychological or medical treatment as a result of any alleged retaliation. In fact, Erhart obtained a new position with a new employer less than three weeks after leaving BofI (and earning $8,000 more per year than he made at BofI). 6-ER-1172; 16-ER-3438-3441). Moreover, the reasonableness of the award must be judged against evidence of damages arising from actionable retaliatory acts. As discussed in the preceding section, the distress he did testify about did not result from actionable retaliatory acts. But even if there had been some modicum of evidence that supported the jury's finding of damages resulting from an actionable retaliatory act, clearly there was no such evidence sufficient to support a $1,000,000 award. The jury's $1,000,000 verdict was not supported by the record and reflects its passion and prejudice against BofI rather than any reasonable construction of the actual evidence. The district court abused its discretion in refusing to grant remittitur or a new trial.

**E.** **The Lack Of Evidence Showing any Injury Arising From a Actual Defamatory Statement Warranted Judgment as a Matter of Law, or Alternatively, a New Trial.**

BofI is entitled to judgment as a matter of law or, alternatively, a new trial, on Erhart's defamation claim because there was insufficient evidence of emotional distress and reputational harm resulting from the defamatory statements regarding his *competence*, the only category of statements which the jury found to be defamatory. 15-ER-2972–73. To recover damages (other than nominal damages) for any actual harm caused by a defamatory statement, Erhart was required to prove that "BofI's wrongful conduct was a substantial factor in causing harm to his reputation or emotional distress." 15-ER-2931–32. If he did so, he could recover either his "actual damages" or nominal damages. *Id.* However, Erhart did not present any evidence of emotional distress or reputational harm from the defamatory statements regarding his competence.[16]

As to emotional distress, Erhart provided no evidence connecting any of his claimed emotional distress to the purported defamatory statements concerning his

---

[16] The district court faulted BofI for failing to move pre-verdict to raise its challenge to the defamation claim based on the lack of evidence of emotional distress or reputational harm. 1-ER-24. But the jury was instructed to award nominal damages not exceeding one dollar if (as was the case) Erhart failed to prove any actual damages resulting from the defamation. Because proving actual damages was not an element of Erhart's defamation claim (*see* Jury Instruction No. 22), it would have been improper for BofI to move to dismiss the claim based on the lack of evidence of actual damages, since Erhart would still be entitled to nominal damages.

competence.  The district court identified no evidence of emotional distress

resulting from defamatory statements concerning his competence in its order

denying BofI's renewed motion for judgment as a matter of law.  The record

simply contained none.

As to reputational harm, Erhart's only testimony was the following:

**Q.** Okay. When -- has anybody in the world outside of the Bank ever told you that they've heard allegations about you that led them to believe that they cannot trust you or they cannot give you a job? Anything to that effect?
**A.** Yes.
**Q.** Tell us about that.
. . .
**Q.** So tell us who told you this first.
**A.** I was employed by a company after BofI called Renovate America, probably around December 2015. After the Bank counter-sued me and after Mr. Garrabrants was on that conference call saying that I was going to go to jail, my boss at Renovate America called me into his office, and he had told me that the Chief Legal Officer at Renovate America had *heard or read the allegations that the Bank had made against me, particularly around Mr. Garrabrants's comments about trying to profit from the price of the stock going down*. And my boss --
. . .
And my boss was really concerned, and he told me, "Matt, I'm going to really try to defend you on this and make sure you keep your job." And it was -- that was a hard discussion. But I knew that the executive level at my next company was really concerned about the allegations levied against me.

6-ER-1157–58 (emphasis added).

The district court nevertheless held that it was "not much of a leap" for the

jury to conclude that "Erhart being called incompetent at his job by the CEO of a

publicly traded company in a transcribed investor call caused him reputational harm."[17] 1-ER-24–25. But the evidence the district court cited is the evidence quoted above, which concerned BofI's non-actionable statements about Erhart possibly profiting from a decline in BofI's stock price following the filing of his lawsuit. That statement on its face does not concern Erhart's competence in performing his duties as an internal auditor. None of Erhart's testimony concerning reputational harm referenced the statements regarding his competence. Therefore, there was no evidence from which any reasonable jury could make that inferential leap.[18] On this record, the jury was required to award Erhart no more than one dollar in nominal damages. 1-ER-2931. This Court should grant judgment as a matter of law, or alternatively, a new trial with respect to Erhart's defamation damages.

---

[17] The district court also noted Erhart's testimony that he had "not had the kind of career that he expected." 1-ER-25. But not a scintilla of evidence was presented connecting Erhart's dismay at his career's trajectory (seven years after the comments were made) to the comments regarding his competence.

[18] The leap the jury made is also contrary to the evidence: Erhart had higher paying jobs for many years after the investor call. 6-ER-1160. Erhart even testified that his boss at Renovate America (his next employer after BofI) successfully fought for Erhart to keep his job (6-ER-1157–58) and he was let go as part of company-wide layoffs. 7-ER-1255.

## VIII. **CONCLUSION**

For the foregoing reasons, BofI respectfully requests that this Court reverse the judgment and the district court's order denying BofI's Renewed Motion for Judgment as a Matter of Law and Motion for New Trial.

Respectfully submitted.

s/ *Polly Towill*

Dated: March 15, 2024

Polly Towill
Sheppard, Mullin, Richter & Hampton LLP
333 South Hope Street, 43rd Fl.
Los Angeles, CA 90071
(213) 620.1780

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that the attached brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6).  I also certify that, according to the word processing program with which the brief was prepared, the brief contains 9,899 words, excluding the items exempted by Federal Rule of Appellate Procedure 32(f), and that it therefore complies with the word limit of Ninth Circuit Rule 32-1(a).

s/ *Polly Towill*
Polly Towill

Dated: March 15, 2024